UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH RANDALL,

           Plaintiff,        Civil Action No. 17-13807
                                        Honorable Sean F. Cox
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]**

Plaintiff Elizabeth Randall ("Randall") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, 12), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Randall is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #11**) be **GRANTED**, Randall's Motion for Summary Judgment (**Doc. #10**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.    REPORT**

    **A.    Background**

Randall was 55 years old at the time of her alleged onset date of January 1, 2015, and at 5'9" tall weighed approximately 134 pounds during the relevant time period. (Tr. 162, 165). She completed high school but had no further education. (Tr. 166). She worked as a records clerk for more than thirty years before stopping work, allegedly because of her medical conditions on January 1, 2015. (Tr. 166-67). She now alleges disability primarily as a result of anxiety and depression, panic attacks, and a cognitive disorder. (Tr. 165, 174).

After Randall's application for DIB was denied at the initial level (Tr. 72-76), she timely requested an administrative hearing, which was held on November 21, 2016, before ALJ Gregory Holiday (Tr. 25-55). Randall, who was represented by attorney Randall Mansur, testified at the hearing, as did vocational expert Erin O'Callaghan. (*Id.*). On February 9, 2017, the ALJ issued a written decision finding that Randall is not disabled under the Act. (Tr. 15-24). On September 28, 2017, the Appeals Council denied review. (Tr. 1-5). Randall timely filed for judicial review of the final decision on November 27, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Randall's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

    **B.    The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Randall is not disabled under the Act. At Step One, the ALJ found that Randall has not engaged in substantial gainful activity since January 1, 2015 (the alleged onset date). (Tr. 17). At Step Two, the ALJ found that she has the severe impairments of moderate depressive disorder, mood disorder, anxiety,

3

schizoaffective disorder, cognitive disorder, and diverticulosis. (*Id.*). At Step Three, the ALJ found that Randall's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18).

The ALJ then assessed Randall's residual functional capacity ("RFC"), concluding that she is capable of performing the full range of work at all exertional levels, with the following nonexertional limitations: must avoid all hazards, such as ladders, ropes, scaffolds, dangerous machinery, unprotected heights, and the like; is limited to one to two-step simple, routine tasks involving little-to-no practical judgment or decision-making and little-to-no changes in the work setting; must have work that is not performed at a production rate or pace; is limited to only brief, superficial interaction with the public and co-workers; and must be permitted to be off-task about 10% of the workday for health reasons. (Tr. 19).

At Step Four, the ALJ found that Randall is not capable of performing any of her past relevant work. (Tr. 22). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Randall is capable of performing the jobs of packer (800,000 jobs nationally), bench assembler (450,000 jobs), and inspector (600,000 jobs). (Tr. 22-23). As a result, the ALJ concluded that Randall is not disabled under the Act. (Tr. 23).

### C.  **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th

Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.     Analysis**

In his decision, the ALJ found that Randall's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 20).  In

5

her motion, Randall cites to Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996), arguing that the ALJ's "credibility determination"[1] is mere "boilerplate" and is not supported by substantial evidence. (Doc. #10 at 11-15). The Court disagrees.

To begin with, the Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must evaluate the claimant's symptoms by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016). In making such an adjudication, a "single, conclusory statement" asserting consideration of the individual's symptoms or reciting the factors in the regulations is insufficient. *Id.* at *9. Instead, "[t]he determination or decision

---

[1] SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). In contrast to the superseded ruling, SSR 16-3p eliminates the use of the term "credibility" from SSA policy, making clear that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. The new ruling does not change the two-step regulatory process for evaluating a claimant's subjective complaints or the regulatory factors for consideration of a claimant's symptoms.

6

must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

In his decision, the ALJ properly set forth the two-part regulatory standard for evaluating a claimant's subjective complaints. (Tr. 20). And, in considering Randall's subjective allegations, the ALJ discussed her hearing testimony and other statements regarding her symptoms; her medication and side effects; her treatment history; and her daily activities. (Tr. 18, 20-22). For example, the ALJ noted that Randall's "mental health diagnoses were largely unchanged before and after she stopped working" (Tr. 20, 336 ("significant depression" since 1997), 340 (chronic depression in 2005)), as well as her testimony that she stopped working when her position was "eliminated," not because she became unable to perform the job she had been performing for many years (Tr. 20, 42, 48). In considering Randall's treatment history, the ALJ also referenced her testimony that "she spoke with her sister about pursuing additional mental health treatment and they both agreed that that was not yet necessary." (Tr. 20, 44). Additionally, the ALJ specifically discussed Randall's testimony that she suffers from medication side effects, including stomach problems. (Tr. 20). And, finally, in terms of activities of daily living, the ALJ noted Randall's testimony that she cares for her own personal needs, shops in stores, drives, prepares simple meals, and does laundry.[2] (Tr. 18, 34-35). Additionally, the Court notes that Randall testified that she

---

[2] In her reply brief, Randall suggests that the ALJ's discussion of her daily activities is insufficient, since he "only mentioned [this] testimony when he assessed the paragraph B criteria of section 12.00 of Appendix 1." (Doc. #12 at 2). Regardless of where in the decision this discussion was located, however, it was appropriate for the ALJ to consider Randall's activities of daily living as one factor in evaluating her subjective complaints. *See Bruner v. Comm'r of Soc. Sec.*, 2016 WL 6080214, at *12 (E.D. Mich. Feb. 18, 2016).

has a "ritual" of going to a friend's house on Halloween to pass out candy, and that she did so with her boyfriend just a few weeks before the hearing in this matter. (Tr. 38-39).

In evaluating Randall's subjective complaints, the ALJ also properly considered the medical evidence of record. *See* 20 C.F.R. § 404.1529(c)(4). Specifically, the ALJ discussed the February 16, 2015 neuropsychological examination of Randall performed by Jasdeep Hundal, Psy.D., at the request of Randall's treating internist, Brian Massaro, M.D. (Tr. 20, 234-42). In considering this evidence, the ALJ properly noted that Dr. Hundal concluded that, although Randall's sister helped manage some expenses, Randall remained fully independent despite her mental health and cognitive problems. (Tr. 21, 239). Contrary to Randall's contention that the ALJ "only evaluated the conclusion of [her] neuropsychological evaluation" (Doc. #10 at 11), the ALJ was not required to recite in detail the entirety of the report. *See Kornecky*, 167 F. App'x at 508 ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."); *Palmer v. Comm'r of Soc. Sec.*, 2017 WL 1632990, at *4 (E.D. Mich. May 2, 2017) ("[T]he Court does not find the ALJ's failure to thoroughly discuss all of the examination findings … in her assessment of Dr. Jilani's opinion to be a fundamental mischaracterization of the evidence sufficient to warrant remand of this matter ….").

Randall also asserts that the ALJ "did not consider the mental health treatment records from Henry Ford Behavioral" in evaluating her subjective complaints. (Doc. #10 at 11). But, the ALJ specifically noted that, throughout Randall's mental health treatment notes from Henry Ford, there

are a slew of Global Assessment of Functioning ("GAF")[3] scores ranging from 50 to 65. (Tr. 21, 429, 437, 441, 452, 455, 457, 459, 461, 462, 464, 468, 471, 473, 475, 477, 479, 489, 491, 493, 518, 520, 525, 533, 535, 538, 543, 545, 548, 554, 556, 558, 561). Thus, it is clear that the ALJ did in fact consider these records, and his decision to give "some weight" to these GAF scores – finding them "well supported by [Randall's] treatment records" – is supported by substantial evidence.[4] *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) ("Dr. Ashbaugh consistently estimated Price's [GAF] score to be in the mid-50s, indicating only 'moderate' symptoms. On this record, we find no error in the ALJ's conclusion that Dr. Ashbaugh's assessment that Price's impairments were debilitating was inconsistent with his treatment notes and prior assessments."); *Hashemi v. Comm'r of Soc. Sec.*, 2015 WL 12696224, at *7 (E.D. Mich. June 10, 2015) (ALJ's determination that claimant was "not entirely credible for a variety of permissible reasons, including [his] relatively high GAF scores" was supported by substantial evidence).

In sum, in assessing Randall's credibility and the effects of her impairments, the ALJ fairly and properly considered the record evidence, including Randall's medical records, statements and activities of daily living. The Court finds no reason to disturb the ALJ's evaluation of Randall's subjective complaints because the ALJ observed Randall firsthand, and his assessment is supported by substantial evidence in the record. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th

---

[3] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

[4] The ALJ's decision is also consistent with and supported by the opinion of the state agency psychological consultant, Leonard Balunas, Ph.D., who found that Randall had no problems with attention and had sufficient concentration to perform simple 1-2 step tasks on a routine and regular basis. (Tr. 66).

9

Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #11**) be **GRANTED**, Randall's Motion for Summary Judgment (**Doc. #10**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: August 15, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager